S01G1163. GOBER v. THE STATE.
S01G1169. BRUTUS v. THE STATE.
(566 SE2d 317)

HINES, Justice.

We granted certiorari to the Court of Appeals in *Gober v. State*, 249 Ga. App. 168 (547 SE2d 656) (2001), and *Giraldo v. State*, 249 Ga. App. 178 (547 SE2d 651) (2001),[1] to determine whether the Court of Appeals was correct in holding that the drugs involved in those cases were properly admitted into evidence. Finding that the drugs were properly admitted, we affirm the Court of Appeals in both cases.

Gober and Brutus were arrested in separate "reverse sting" operations in which they bought illegal drugs from undercover police officers. In Case No. S01G1163, Gober was convicted of purchasing one ounce of methamphetamine. The methamphetamine had been seized in a prior case and the police had taken it from their evidence locker for the reverse sting.

Prior to his conviction, Gober filed a petition for a writ of manda-

---

mus to compel the Chief of the Gwinnett Police Department to destroy all drugs held for reverse stings, including that which was to be used as evidence in his case. As the police had insufficient records to determine the ownership of the drugs held in evidence lockers, the drugs were deemed forfeited to the State, see OCGA § 16-13-49 (y), and the trial court ordered that the police destroy all drugs so held, unless the drugs were evidence in a pending criminal matter. See OCGA § 16-13-49 (u) (1). The Chief of Police appealed, and in *Dean v. Gober*, 272 Ga. 20 (524 SE2d 722) (1999), this Court affirmed the trial court to the extent that its order held that the police were to destroy those drugs then in their possession that were not needed as evidence, holding that under OCGA § 16-13-49 (u) (1) forfeited drugs must be destroyed "when no longer needed for evidentiary purposes." The drugs used in Gober's prosecution were not to be destroyed as they could still be needed for evidentiary purposes; even though Gober had already been convicted for possession of methamphetamine at the time this Court's opinion was rendered, there was the potential for a retrial. Id. at 23 (3). Gober appealed his conviction to the Court of Appeals, and it is that Court's affirmance of his conviction that is before us on certiorari.

In Case No. S01G1169, Brutus was indicted for trafficking in cocaine and possessing cocaine with intent to distribute. Brutus moved to dismiss the indictment and was granted an interlocutory appeal from the trial court's denial of the motion. The Court of Appeals affirmed the denial of the motion, and this Court granted a writ of certiorari.

## Case No. S01G1163

1. Gober cites the mandates of OCGA § 16-13-49 (u) (1) and (y) that methamphetamine such as that used in his reverse sting (i.e., whose owners are unknown) must be destroyed, and he notes that this Court recognized in *Dean*, supra at 22 (1), that the statute so mandates. And he contends that the police, in conducting a reverse sting with methamphetamine that should have previously been destroyed, violated his due process rights. In doing so, he relies upon a statement in *United States v. Russell*, 411 U. S. 423, 431-432 (93 SC 1637, 36 LE2d 366) (1973). That opinion addressed an entrapment defense, and stated that

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction [cit.], the instant case is distinctly not of that breed.

Id.

Gober urges that his case is "one of that breed." But as the United States Supreme Court stated when discussing *Russell*, "[t]he limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the *defendant*." (Emphasis in original.) *Hampton v. United States*, 425 U. S. 484, 490 (96 SC 1646, 48 LE2d 113) (1976). The declaration found in OCGA § 16-13-49 (u) (1) that certain drugs be destroyed does not create any right in the defendant, it only imposes a separate, unrelated obligation on the police. Here, as in *Hampton*, Gober acted in concert with the police, but the government activity did not create any entrapment, and did not deprive him of any right. Id. at 490-491.

Further, the police can legally possess and use drugs in reverse stings. See *Dean*, supra at 23-24 (4). The fact that the drugs used by the police had not been previously destroyed as the statute declared does not render the police conduct so fundamentally unfair and shocking so as to violate due process. See *Wilcox v. State*, 250 Ga. 745, 755 (4) (301 SE2d 251) (1983).

2. To the extent that Gober contends that OCGA § 16-13-49 (u) compels that the methamphetamine be destroyed sometime *after* its use in the reverse sting, but *prior* to the prosecution of his case, that argument is foreclosed by this Court's prior decision in *Dean*, supra at 23 (3). See OCGA § 16-13-49 (u) (1).

### Case No. S01G1169

3. Brutus also urges that the use of the drugs in his reverse sting is a violation of due process. See Division 1, supra. Of course, the drugs used in his prosecution had a different origin, and thus a potentially different disposition under OCGA § 16-13-49. The cocaine used in the reverse sting at issue came from either of two cases dating from 1982 and 1985. Unlike the methamphetamine in Gober's case, here the trial court found as fact that the State had shown that the owner of the cocaine was known under subsection (y), and the Court of Appeals affirmed that finding. As the owner was known, the cocaine was not summarily forfeited to the State, nor had the State initiated forfeiture proceedings against it. See OCGA § 16-13-49 (x). The cocaine therefore did not need to be destroyed under OCGA § 16-13-49 (u) (1), which provides that forfeited property that is harmful to the public and no longer needed for evidentiary purposes must be destroyed.

Brutus, however, argues that the cocaine, and all other confiscated illegal drugs, could never have an "owner" within the meaning of OCGA § 16-13-49 and must be destroyed. The argument is based

on the interplay of OCGA § 16-13-49's various subsections. OCGA § 16-13-49 (u) (1) states:

> Whenever property is forfeited under this article, any property which is required by law to be destroyed or which is harmful to the public shall, when no longer needed for evidentiary purposes, be destroyed or forwarded to the Division of Forensic Sciences of the Georgia Bureau of Investigation or any other agency of state or local government for destruction or for any medical or scientific use not prohibited under the laws of the United States or this state.

And OCGA § 16-13-49 (y) states "[c]ontrolled substances included in Schedule I which are contraband and any controlled substance whose owners are unknown are summarily forfeited to the state." OCGA § 16-13-49 (a) (7) defines "owner" as "a person . . . who has an interest in property and is in compliance with any statute requiring its recordation or reflection in public records in order to perfect the interest against a bona fide purchaser for value." Finally, OCGA § 16-13-49 (d) (1) provides that all controlled substances that are "manufactured, distributed, dispensed, possessed, or acquired in violation of" Georgia controlled substance law are "contraband and no person shall have a property right in them." Based on these provisions, Brutus argues that the cocaine used in his reverse sting was contraband; no person had a property right in it; its owners therefore were "unknown" and the cocaine was summarily forfeited; and the cocaine therefore had to be destroyed when it was no longer needed for evidence in the case in which it was seized.

The gravamen of Brutus's argument is that subsection (d), by "statutory definition," renders all cocaine ownerless within the meaning of subsection (y). However, his argument misunderstands and overstates the purpose of subsection (d), which simply sets forth the six categories of property that are subject to forfeiture. See *Pitts v. State of Ga.*, 207 Ga. App. 606 (2) (428 SE2d 650) (1993). OCGA § 16-13-49 (d) cannot be read in isolated reference to subsection (y); it is part of the Code section as a whole. Obviously its provisions do not extinguish all possible ownership rights in the six categories of property it lists, else other provisions of OCGA § 16-13-49 would be immaterial. In fact, the immediately following subsection states that in a variety of circumstances, property interests will not be subject to forfeiture, such as when the interest holder did not know of the illegal activity or is a subsequent bona fide purchaser for value who did not knowingly take part in an illegal transaction. See OCGA § 16-13-49 (e) (1) and (e) (5) (B) (i). These and other such provisions are inconsistent with the reading of subsection (d) that Brutus urges.

OCGA § 16-13-49 (y) itself declares that "[t]he court may include in any judgment of conviction under this article an order forfeiting any controlled substance involved in the offense to the extent of the defendant's interest," thus recognizing ownership interests beyond the limiting interpretation Brutus urges for subsection (d).

Further, Brutus's argument also ignores this Court's statement in *Dean,* supra at 22, that "the ownership of the contraband in the [police's evidence] safe could not be determined." Clearly, this statement also shows Brutus's interpretation to be incorrect. If OCGA § 16-13-49 (d) (1)'s definition of contraband eliminated any person's interest therein, it would render irrelevant any question of whether an "owner" is known for the purposes of summary forfeiture under OCGA § 16-13-49 (y), and this Court would not have needed to make the above pronouncement in *Dean.* Construing subsection (d) to control subsection (y) in the manner Brutus suggests would make subsection (y)'s reference to an owner mere surplusage as there would be no owner.

In conclusion, subsection (d) does not place this cocaine in the category of "controlled substance[s] whose owners are unknown" within the meaning of subsection (y). Thus, the Court of Appeals was correct in finding that the cocaine here was not summarily forfeited under subsection (y), and that it was not subject to destruction under OCGA § 16-13-49 (u).

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 3, 2002 —
RECONSIDERATION DENIED JULY 26, 2002.

*Case No. S01G1163*

*Peevy & Lancaster, Gregory W. Lancaster,* for appellant.
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney,* for appellee.

*Case No. S01G1169*

*Stephen T. Maples, Bernard Knight, Karlyn Skall,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Kristen M. Childers, Assistant District Attorneys,* for appellee.